IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MINA GERGES<br>2324 Kirkgate Lane<br>Charlotte, NC 28215<br>        Plaintiff,<br><br>        v.<br><br>JOHNSON C SMITH UNIVERSITY,<br>INCORPORATED<br>100 Beatties Ford Road<br>Charlotte, NC 28216<br><br>   **Serve also:**<br>   JOHNSON C SMITH UNIVERSITY,<br>   INCORPORATED<br>   c/o Dorothy Cowser Yancey<br>   100 Beatties Ford Road<br>   Charlotte, NC 28216<br><br>        Defendant. | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Mina Gerges, by and through undersigned counsel, as his Complaint against Defendant Johnson C. Smith University, Incorporated ("JCSU" or "Defendant"), states and avers the following:

**PARTIES**

1. Gerges is a resident of the city of Charlotte, county of Mecklenburg, state of North Carolina.

2. JCSU is a domestic corporation whose principal place of business is located at 100 Beatties Ford Road, Charlotte, NC 28216.

3. Johnson C Smith University was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq*.; 29 U.S.C § 2601, *et seq*. and 42 U.S.C. § 2000e et seq..

4. Johnson C Smith University was at all times hereinafter mentioned, was a "person" within the meaning of 29 USC § 203(a) AND/OR an "employer" within the meaning of 29 USC § 2611(4)(A).

**JURISDICTION & VENUE**

5. JCSU hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over JCSU comports with due process.

6. This cause of action arose from or relates to the contracts of JCSU with North Carolina residents, thereby conferring specific jurisdiction over JCSU.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.* and Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq*.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Gerges's state law claims because those claims derive from a common nucleus of operative facts.

9. Venue is proper in this District because the wrongs herein alleged occurred in this District.

10. Within 180 days of the conduct alleged below, Gerges filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2025-03544 against JCSU operating at 100 Beatties Ford Road, Charlotte, NC 28216.

11. On or about 07/10/2025 the EEOC issued and mailed a Notice of Right to Sue letter to Gerges regarding the Charges of Discrimination brought by Gerges against JCSU in EEOC Agency Charge No. 430-2025-03544.

12. Gerges received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

13. Gerges has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Gerges has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Gerges is a former employee of JCSU.

16. Gerges is Egyptian.

17. Gerges is Middle Eastern.

18. Gerges suffers from asthma, anxiety, and depression. ("Gerges's Disabilities")

19. Gerges's Disabilities substantially limits Gerges's major life activities.

20. Gerges's Disabilities substantially limits Gerges's major life activities including breathing, talking, concentrating, sleeping, and working.

21. Gerges's asthma comes in episodes called asthma attacks where he needs access to two inhalers and a Nucala injection to enable him to breathe.

22. Gerges' asthma attacks occur once or twice every month.

23. When Gerges has an asthma attack, Gerges must go to the hospital.

24. Gerges is disabled.

25. In the alternative, JCSU perceived Gerges as disabled.

26. Gerges had a record of disability in his asthma.

27. In the alternative, JCSU was aware of Gerges's record of disability.

28. Gerges was hired on or about January 8, 2024.

29. Gerges was hired as a Professional Math Tutor for JCSU.

30. Gerges was hired as a result of Gerges's skills and experience.

31. Gerges was qualified for his position as a result of his skills and experience.

32. JCSU hired Gerges as a result of his skills and experience.

33. Gerges continued to be qualified for his position as a result of his skills and experience.

34. Gerges also continued to be qualified for his position by meeting JCSU's legitimate business expectations.

35. Gerges continued to meet JCSU's legitimate business expectations by remaining committed to student success, cultivating good relationships with students to provide better education, and continuing to attempt to improve the education of the students.

36. Gerges remained qualified for his position at all relevant times referenced herein.

37. Gerges was hired by Dr. Angela White with Dr. Dereck Virgil as Gerges' direct supervisor.

38. White is American.

39. White is African American.

40. White is not disabled.

41. White was aware of Gerges's disability.

42. White perceived Gerges as disabled.

43. White was aware of Gerges's record of disability.

44. White had the authority to hire, fire, or discipline employees.

45. White had the authority to hire, fire, or discipline Gerges.

46. White was aware that Gerges is disabled.

47. In the alternative, White perceived Gerges as disabled.

48. In the alternative, White became aware of Gerges's record of disability.

49. Virgil is American.

50. Virgil is African American.

51. Virgil is not disabled.

52. Virgil was Gerges's direct supervisor.

53. Virgil had the authority to hire, fire, or discipline Gerges.

54. Gerges informed Virgil about Gerges's Disabilities.

55. When informing Virgil about Gerges's Disabilities, Gerges informed Virgil that if Gerges had an asthma attack, Gerges needed to go to the hospital.

56. Concurrently with informing Virgil about Gerges's Disabilities, Gerges submitted a letter from his doctor to JCSU requesting the ability to go to the hospital when Gerges suffered from an asthma attack.

57. Virgil approved Gerges's accommodations request at the time of Gerges's hire.

58. JCSU approved Gerges's accommodations request at the time of Gerges's hire.

59. After JCSU approved Gerges's accommodations request, Gerges did not receive any discipline for his job performance.

60. Gerges performed his job to a level that met or exceeded JCSU's legitimate job expectations.

61. In or around May, 2024, Gerges broke his leg.

62. After breaking his leg, Gerges was put onto a medication that, in combination with Gerges's asthma made his body fragile.

63. While Gerges's body was fragile, Gerges's doctor recommended that Gerges be allowed to work remotely.

64. Gerges's work could be completed remotely.

65. Gerges was able to perform his job responsibilities with or without accommodations.

66. Gerges working remotely would not cause undue hardship on JCSU.

67. Gerges requested the ability to work remotely. ("Gerges's First Accommodations Request")

68. Gerges's First Accommodations Request was made to Virgil.

69. Gerges's First Accommodations Request was reasonable.

70. Gerges's First Accommodations Request would not cause undue hardship on JCSU.

71. Virgil approved Gerges's First Accommodations Request.

72. In or around November, 2024, a new dean was hired by JCSU.

73. The new dean was Dr. Angela White.

74. Once White became Dean, upon information and belief White was informed of Gerges's Disabilities.

75. Once White became dean, White began to pressure Virgil to terminate Gerges's employment.

76. White did not give Virgil a reason to terminate Gerges's employment.

77. White did not have specific complaints about Gerges's performance.

78. White did not have the opportunity to observe Gerges's performance previously.

79. White did not try to have Virgil fire American employees.

80. White did not try to have Virgil fire Caucasian employees.

81. White did not try to have Virgil fire non-disabled employees.

82. White attempted to have Virgil fire Gerges because of Gerges's national origin.

83. White attempted to have Virgil fire Gerges because of Gerges's race.

84. White attempted to have Virgil fire Gerges because of Gerges's disability.

85. White attempted to have Virgil fire Gerges because of Gerges's perceived disability.

86. White attempted to have Virgil fire Gerges because of Gerges's record of disability.

87. Virgil did not fire Gerges due to White's requests.

88. On or about January 5, 2025, White terminated Virgil's employment.

89. After White terminated Virgil's employment, Bianca Miller became Gerges's direct supervisor.

90. Miller is American.

91. Miller is African American.

92. Miller is not disabled.

93. Miller was aware of Gerges's disability.

94. Miller perceived Gerges as disabled.

95. Miller was aware of Gerges's record of disability.

96. After Miller became Gerges's direct supervisor, Miller revoked Gerges's accommodations by requiring Gerges to attend in person.

97. After Miller became Gerges's direct supervisor, White revoked Gerges's accommodations by requiring Gerges to attend in person.

98. Miller did not revoke the accommodations of American employees.

99. Miller did not revoke the accommodations of Caucasian employees.

100. Miller did not revoke the accommodations of non-disabled employees.

101. Miller revoked the accommodations of Gerges because of Gerges's national origin.

102. Miller revoked the accommodations of Gerges because of Gerges's race.

103. Miller revoked the accommodations of Gerges because of Gerges's disability.

104. Miller revoked the accommodations of Gerges because of Gerges's perceived disability.

105. Miller revoked the accommodations of Gerges because of Gerges's record of disability.

106. White did not revoke the accommodations of American employees.

107. White did not revoke the accommodations of Caucasian employees.

108. White did not revoke the accommodations of non-disabled employees.

109. White revoked the accommodations of Gerges because of Gerges's national origin.

110. White revoked the accommodations of Gerges because of Gerges's race.

111. White revoked the accommodations of Gerges because of Gerges's disability.

112. White revoked the accommodations of Gerges because of Gerges's perceived disability.

113. White revoked the accommodations of Gerges because of Gerges's record of disability.

114. On or about January 13, 2025, Gerges suffered from an asthma attack.

115. As a result of the January 13 asthma attack, Gerges went to the hospital and called out of work.

116. At the time Gerges suffered from the January 13 asthma attack, Gerges had worked more than 1,250 hours out of the past year.

117. At the time Gerges suffered from the January 13 asthma attack, Gerges had been employed for over one year.

118. At the time Gerges suffered from the January 13 asthma attack, JCSU had over 50 employees.

119. When Gerges suffered from the January 13 asthma attack, Gerges put JCSU on notice of a FMLA qualifying reason for his leave request.

120. Gerges's asthma is a qualifying condition for intermittent leave under the FMLA.

121. Gerges requested the time out of work.

122. JCSU failed to provide Gerges with information relating to Gerges's eligibility for FMLA.

123. White failed to provide Gerges with information relating to Gerges's eligibility for FMLA.

124. Miller failed to provide Gerges with information relating to Gerges's eligibility for FMLA.

125. Gerges's request for leave to go to the hospital for the January 13 asthma attack was a request for reasonable accommodation. ("Gerges's Second Request for Accommodations")

126. Gerges's Second Accommodations Request was made to Miller.

127. Gerges's Second Accommodations Request was reasonable.

128. Gerges's Second Accommodations Request would not cause undue hardship on JCSU.

129. JCSU did not respond to Gerges's Second Accommodations Request.

130. On or about January 25, 2025, JCUS terminated Gerges's employment.

131. JCSU's purported reason for Gerges's termination is pretext for discrimination.

132. JCSU's purported reason for Gerges's termination is pretext for discrimination based on Gerges's race.

133. JCSU's purported reason for Gerges's termination is pretext for discrimination based on Gerges's national origin.

134. JCSU's purported reason for Gerges's termination is pretext for discrimination based on Gerges's disability.

135. JCSU's purported reason for Gerges's termination is pretext for discrimination based on Gerges's disability.

136. JCSU's purported reason for Gerges's termination is pretext for discrimination based on Gerges's perceived disability.

137. JCSU's purported reason for Gerges's termination is pretext for discrimination based on Gerges's record of disability.

138. JCSU's purported reason for Gerges's termination is pretext for retaliation.

139. JCSU's purported reason for Gerges's termination is pretext for retaliation for Gerges's Second Request for Accommodations.

140. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Gerges.

141. Upon information and belief, Gerges's termination of employment, Defendants hired or retained an individual outside of Gerges's protected class to replace Gerges.

142. As a result of Defendant's conduct, Gerges suffered, and will continue to suffer damages.

## COUNT I: UNLAWFUL RACE DISCRIMINATION IN VIOLATION OF 42 USC § 2000E

143. Gerges restates every paragraph of this complaint as though fully restated herein.

144. Gerges is a member of a statutorily protected class under 42 U.S.C. § 2000e et. seq. based on his race.

145. JCSU discriminated against/harassed Gerges because of Gerges's race when JCSU terminated Gerges's employment .

146. JCSU's conduct towards Gerges violated 42 U.S.C. § 2000e et. seq.

147. As a result of JCSU's unlawful acts against Gerges in violation of 42 U.S.C. § 2000e et. seq., Gerges has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Gerges to injunctive, equitable, and compensatory monetary relief.

148. As a result of JCSU's unlawful acts against Gerges in violation of 42 U.S.C. § 2000e et. seq., Gerges has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

149. In its unlawful acts as alleged above, JCSU has acted with malice or reckless indifference to Gerges's rights, thereby entitling Gerges to an award of punitive damages.

150. To remedy the violations of Gerges's 42 U.S.C. § 2000e et. seq. rights, Gerges requests that the Court award him the relief prayed for below.

## COUNT II: UNLAWFUL NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF 42 USC § 2000E

151. Gerges restates every paragraph of this complaint as though fully restated herein.

152. Gerges is a member of a statutorily protected class under 42 U.S.C. § 2000e et. seq. based on his national origin.

153. JCSU discriminated against/harassed Gerges because of Gerges's national origin when JCSU terminated Gerges's employment .

154. JCSU's conduct towards Gerges violated 42 U.S.C. § 2000e et. seq.

155. As a result of JCSU's unlawful acts against Gerges in violation of 42 U.S.C. § 2000e et. seq., Gerges has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Gerges to injunctive, equitable, and compensatory monetary relief.

156. As a result of JCSU's unlawful acts against Gerges in violation of 42 U.S.C. § 2000e et. seq., Gerges has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

157. In its unlawful acts as alleged above, JCSU has acted with malice or reckless indifference to Gerges's rights, thereby entitling Gerges to an award of punitive damages.

158. To remedy the violations of Gerges's 42 U.S.C. § 2000e et. seq. rights, Gerges requests that the Court award him the relief prayed for below.

## COUNT III: **DISABILITY DISCRIMINATION**

159. Gerges restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

160. Gerges suffers from asthma, anxiety, and depression.

161. Gerges is disabled.

162. In the alternative, JCSU perceived Gerges as being disabled.

163. Gerges's condition constituted a physical impairment.

164. Gerges's condition substantially impaired one or more of his major life activities including working.

165. JCSU perceived Gerges's condition to substantially impair one or more of his major life activities including working.

166. JCSU treated Gerges differently than other similarly-situated employees based on his disabling condition.

167. JCSU treated Gerges differently than other similarly-situated employees based on his perceived disabling condition.

168. On or about January 25, 2025, Defendant terminated Gerges's employment without just cause.

169. Defendant terminated Gerges's employment based his disability.

170. Defendant terminated Gerges's employment based his perceived disability.

171. JCSU violated The American with Disabilities Act (ADA) section.

172. As a direct and proximate result of Defendant's conduct, Gerges suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: DISABILITY DISCRIMINATION - FAILURE TO ACCOMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT

173. Gerges informed JCSU of his disabling condition.

174. Gerges's requested accommodations were reasonable.

175. There was an accommodation available that would have been effective and would have not posed an undue hardship to JCSU.

176. JCSU failed to engage in the interactive process of determining whether Gerges needed an accommodation.

177. JCSU failed to provide an accommodation.

178. JCSU violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

179. As a direct and proximate result of JCSU's conduct, Gerges suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

180. Gerges restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

181. At all times referenced herein, JCSU employed fifty (50) or more employees for twenty (20) or more workweeks during the calendar years of 2024 and/or 2025 between and among its corporate headquarters office, warehouse(s) and/or storage facilities, and customer work sites, which are located within seventy-five (75) miles of each other, and thus was a covered employer under the FMLA pursuant to 29 CFR § 825.104.

182. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

183. JCSU is a covered employer under the FMLA.

184. During his employment, Gerges qualified for FMLA leave.

185. During his employment, Gerges attempted to request FMLA leave by asking Defendant for time out of work for his asthma attacks.

186. Defendants failed to properly advise Gerges of his rights under the FMLA.

187. Defendants unlawfully interfered with Gerges's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

188. As a direct and proximate result of Defendants' conduct, Gerges is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Mina Gerges demands from Defendants the following:

(a) Issue an order requiring JCSU to restore Gerges to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Gerges for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Gerges's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*
Evan Gungor (60902)
**S**PITZ, **T**HE **E**MPLOYEE'S **L**AW **F**IRM
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:     (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Mina Gerges*

15

Case 3:25-cv-00763-FDW-DCK    Document 1    Filed 10/06/25    Page 15 of 16

## JURY DEMAND

Plaintiff Mina Gerges demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)
